## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RENEE C. KEYES, )
)
    Plaintiff, )
)
    v. )    **CA 03-179Erie**
)
JO ANNE B. BARNHART, )
Commissioner of Social Security, )
)
    Defendant. )

## OPINION

COHILL, D.J.

    Renee C. Keyes ("Claimant") here appeals the Commissioner's denial of her claim for child's disability benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c)(3). Specifically, Keyes appeals the determination that she is not disabled because she can perform work that exists in significant numbers in the national economy. Before the Court are cross-motions for summary judgment filed by the parties to this appeal pursuant to Fed. R. Civ. P. 56. We have jurisdiction under 42 U.S.C. § 405(g).

    Having considered the arguments of the parties, the administrative record, and the applicable law, for the reasons set forth below we will grant summary judgment in favor of the Commissioner and against the Claimant.

## I. Background

    Keyes first filed an application for child's insurance benefits and SSI on December 5, 2000, alleging disability as of November 1, 1998, due to mental problems. [1] (Tr. 137, 189).

---

[1] The Social Security Act provides for payments to the disabled adult child of an insured wage earner, provided that the child is under a disability that began on or before the day the child attained age 22. To be eligible for benefits, the adult child must also prove that she is the child of the wage earner, is unmarried (unless one of the exceptions in 20 CFR § 404.352(b)(2) applies,) and is dependent on the wage earner. To succeed on her claim on her father's social security benefits, Keyes must show that she is currently disabled, and that she has been continuously disabled since she attained age 22 on November 28, 2002.

These claims were denied during administrative review, and she requested a hearing. (Tr. 88-91, 95-97, 388-91, 393-96).

Keyes' claims were heard by Administrative Law Judge ("ALJ") Michael F. Colligan on October 23, 2002 (Tr.) They were denied by decision dated January 31, 2003. (Tr. 77-87). This decision was upheld by the Appeals Council, and Claimant sought judicial review in the federal district court. (Tr. 19). However, on November 6, 2003, after being notified by the Social Security Administration that the administrative record of Keyes' case had been lost, the district court granted the Commissioner's motion for a voluntary remand. (Tr. 125). On February 27, 2004, the Appeals Counsel vacated the ALJ's decision, and remanded to ALJ Colligan to reconstruct the administrative record and conduct another hearing. (Tr. 127-28).

The second administrative hearing was held on October 6, 2004 (Tr. 50-71). Ultimately, the missing records were found, and the exhibits from both administrative hearings were merged in the record.

Claimant was represented by counsel and testified at the administrative hearing. A vocational expert, Fred A. Monaco, Ph.D, also testified (Tr. 50-71).

Renee Keyes was twenty-three years old at the time of the second hearing. (Tr. 54). She has a tenth grade education, and no past relevant work experience (Tr. 55).

**The ALJ's Decision**

A vocational expert testified that considering Claimant's age, educational background, work experience, and non-exertional limitations, she would make a successful adjustment to work as a surveillance systems monitor, hand packer, and janitor or cleaner. (Tr. 68).

The ALJ left the record open for ten days for further wage information. (Tr. 70).

By decision dated April 19, 2005, Keyes's claims were denied. (Tr. 16-25 ). The ALJ concluded that Keyes had a severe mental disorder which did not meet or equal the criteria of listed medical impairments, and non-severe obesity. (R. 24 findings 3, 4). The ALJ found that Claimant's testimony regarding her impairments was not fully credible. (Tr. 24-5 finding 5).

2

The ALJ concluded that Keyes has the residual functional capacity to do unskilled work that does not involve public contact or close personal interactions, and that she can understand, remember, and carry out simple, routine, repetitive instructions. (Tr. 25, finding 6). Therefore, the ALJ concluded that the Claimant was not disabled within the meaning of the Act. (Tr. 25 finding 11).

The Appeals Council declined to review the ALJ's decision. On June 13, 2006, the Commissioner filed a motion to reopen, and the case was reopened in the district court on June 14, 2006.

## II. Standard of Review

The standard of review used by this Court in reviewing the decision of the Commissioner in social security cases is whether substantial evidence exists in the record to support the decision. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Judicial scope of review of a social security case is based upon the pleadings and transcript of the record. 42 U.S.C. § 405(g). We review the Commissioner's decision only to determine whether she applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *Schaudeck v. Commissioner of Social Sec. Admn.*, 181 F.3d 429, 431 (3d Cir. 1999). The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). We may not undertake a *de novo* review of the decision, and may not reweigh the evidence of record. *Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

"Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). Substantial evidence has been defined as more than a mere scintilla. *Plumer*, 186 F.3d at 427; *Hess v. Secretary*, 497 F.2d 837, 838 (3d Cir. 1974).

3

Evidence is not substantial if the Commissioner fails to resolve conflicts created by countervailing evidence, particularly that of treating physicians, or if it is not evidence but mere conclusion. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Commissioner may accept or reject testimony or other evidence, but is not free to mischaracterize the evidence or to reject it for no reason or for the wrong reason. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).

To be eligible for social security disability benefits, a plaintiff must demonstrate an inability to engage in substantial gainful activity because of a medically-determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

To facilitate the disability determination, the Commissioner has set forth a five-step sequential analysis for an ALJ to use when evaluating the disabled status of a claimant. 20 C.F.R. § 404.1520(a); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). The ALJ must determine (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent the performance of past relevant work; and (5) if the claimant is incapable of performing past relevant work, whether he can perform any other work that exists in the national economy, in light of his age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520.

The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to his previous employment. *Dobrowolsky*, 606 F.2d at 406. Once this burden is met, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity. *Id.*

4

We have carefully reviewed the entire record and will not reweigh the evidence of record. *Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

## III. Analysis

Applying this five-part framework to the Claimant's case, the ALJ found that the Claimant has not engaged in substantial gainful activity during the relevant period. ( Tr. 24). Claimant has a severe depressive disorder that does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. ( Tr. 24). She also has non-severe obesity. (Tr. 24). She has no past relevant work. (Tr. 25). However, she has the residual functional capacity for unskilled work that does not involve public contact or close personal interactions. (Tr. 25). Accordingly, the ALJ found that Keyes was not disabled. (Tr. 25).

### Claimant's Testimony

Claimant testified that she was twenty-three years old, single, and shared an apartment with a roommate. She had been working at the Salvation Army since February 5, 2004, for four hours a day, five days a week, sorting through clothes. She earned $5.75 an hour. (Tr. 55-56). She left school after tenth grade. She walks about nine blocks to work. (Tr. 61).

She testified that she has difficulty standing: her legs ache and her feet swell up. (Tr. 57). Her lower back also hurts. (Tr. 58). She testified that even if her job were offered to her full-time, she would not take it, because "I can't stand being on my feet that long (.)" (Tr. 65).

She prefers that people leave her alone, and said that "I don't interact well with other people." (Tr. 63). She works to pay her bills. (Tr. 64). Her concentration is poor, and she has a hard time focusing. (Tr. 66).

Claimant was not receiving medical treatment at the time of the hearing, and was not taking any medication for her legs or back. (Tr. 58).

She testified that she was not seeing a mental health professional, and was not taking any medication for depression. She had not seen a mental health provider since June of 2003,

and had not seen any doctor in over a year. (Tr. 59-60). From December 2000 through June 2003, Keyes was treated for depression by her family doctor. (Tr. 59).

Keyes said she had no motivation to see a doctor: "I mean my doctor's all the way – a distance for me to go to and I just don't have the motivation to find a doctor up here." (Tr. 60).

She also testified that "I just don't have the motivation to do nothing." When she gets home from work, she lays down until evening, then eats a TV dinner about 6:00 and lays down again "until 6:20 in the morning and get up and do it all over again." (Tr. 64).

Claimant reported her activities in a daily activities questionnaire on March 11, 2004. She reported that she lives with a friend in an apartment, where she washes dishes, does laundry, and cooks meals in the microwave. She enjoys listening to music. She goes grocery shopping once a month, and pays her own bills. She does not feel comfortable being with a lot of people, and does not visit family or friends although sometimes they visit her. (Tr. 260-62).

**Medical Record**

Psychologist Richard C. Halas, M.A., performed a consultative psychological evaluation on February 26, 2001, at the Commissioner's request, to determine Claimant's current intellectual, reading and memory functioning levels. (Tr. 286-73). Intellectual testing showed that she was within the average range of intellectual functioning. (Tr. 289). Her concentration and short-term memory functioning were below average, and she read at a third grade level. (Tr. 287, 289). Her speech pattern was slow and hesitant, and the psychologist noted a poverty of speech. (Tr. 287). She admitted to feelings of hopelessness, helplessness, and worthlessness. (Tr. 287). Halas determined that Keyes was able to follow simple one-and two-step instructions, and would be able to follow through with simple written instructions. (Tr. 290). He stated that Claimant appeared to have some psychological problems which would likely interfere with appropriate interactions between peers, supervisors, and the general public, and diagnosed a depressive disorder and obesity. (Tr. 290-91). Her GAF score was 55. (Tr. 291). Halas concluded that her mental impairment did not restrict her understanding, insight,

6

or judgment. (Tr. 290).

At the Commissioner's request, Naomi Waldbaum, M.D., conducted a physical examination of the Claimant on November 12, 2001. (Tr. 314-16). She described Keyes as a "young, medically healthy, morbidly obese lady" and found no abnormal pathology aside from obesity. (Tr. 316). At the time of the examiniation, Claimant was 5' 6" tall and weighed 318 pounds. (Tr. 315). Waldbaum concluded that Keyes could perform many different types of jobs, with limitations due to size constraints. (Tr. 316).

Guy G. Melvin, Ph.D., a state agency psychologist, reviewed Claimant's medical records on April 19, 2001 and submitted a psychiatric review technique form and mental residual functional capacity ("RFC") assessment. (Tr. 295-312). He determined that Keyes had moderate restriction in activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. (Tr. 305). Melvin concluded that Claimant's cognitive functioning was sufficient for at least simple and routine tasks that could be performed without strict time or production pressures. (Tr. 311).

Claimant's family doctor is Deborah Bishop, M.D. On June 10, 2002, she diagnosed depression and prescribed Celexa. (Tr. 326). On June 19, the medication was changed to Zoloft. (Tr. 330). After taking Zoloft, Keyes reported that she was sleeping better but still feeling upset and angry. (Tr. 345).

A letter from Jane Drumm, LSW to the Bureau of Disability Determination, dated March 19, 2003, reports on Keyes' participation in the Family Services Office Based Counseling Program. (Tr. 360-61). Claimant had referred herself for counseling, and reported "depression, sleeping problems, anger outbursts, frequent crying, difficulty being with people, fear of driving, anxiety, and feelings of grief and loss." (Tr. 360). She was scheduled to attend weekly to bi-weekly counseling sessions, but her attendance was sporadic and her file was closed after a letter attempting to schedule future appointments was returned as undeliverable.

7

Drumm stated that her client's motivation in treatment was moderate, as was her progress in meeting treatment goals. (Tr. 360-61).

At the Commissioner's request, Ann McDonald, M.D. performed a consultative psychiatric examination on April 11, 2003. (Tr. 362-67). McDonald reported that Keyes was taking Zoloft as prescribed by her family doctor, and that she was tolerating it well and sleeping better. (Tr. 363). Claimant was depressed, had little energy, and stated that she would prefer to spend most of her time in bed. (Tr. 363). In McDonald's opinion, Claimant's intellectual functioning was borderline to very low IQ. (Tr. 363). She concluded that Keyes would have fair ability to follow work rules, use judgment, maintain attention and concentration at the workplace, and understand, remember and carry out simple job instructions. (Tr. 364) She would have poor to no ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stressors, or to understand, remember and carry out detailed or complex job instructions. (Tr. 364). McDonald diagnosed Keyes with social anxiety disorder, learning disability, and obesity, and determined that she had severe to profound psychosocial stressors. Her GAF score was assessed at 40-45. (Tr. 365).

Claimant's medical records were reviewed by Sharon Becker Tarter, Ph.D., a state agency psychologist, on May 28, 2003. Dr. Tarter completed a psychiatric review technique form and mental residual functional capacity assessment form. (Tr. 368-81). The record showed mild restriction of activities of daily living, moderate difficulties maintaining social functioning and concentration, persistence or pace, and no episodes of decompensation. (Tr. 378). Medical evidence showed impairments of social anxiety disorder, learning disorder, and depression. (Tr. 384). Claimant's intellectual functioning was in the average range. She had never been hospitalized for mental impairments, and was not participating in any mental health treatment program. Her family doctor had prescribed psychotropic medication. (Tr. 384).

In the areas of making occupational adjustments and making personal and social adjustments, Tarter found that McDonald's report was not fully consistent with the medical and

8

non-medical evidence of record. (Tr. 384). She found McDonald's report only partially
consistent with her own assessment of the evidence. Tarter concluded that Keyes was able to
meet the basic mental demands of competitive work on a sustained basis, despite limitations
from her impairments. (Tr. 384).

**Claimant's Argument**

The Claimant argues that the ALJ improperly assessed evidence relating to her mental
residual functional capacity when he found her able "to do work that does not involve public
contact or close personal interactions. She can understand, remember, and carry out simple,
routine, repetitive instructions." (Tr. 25; Br. 5). Claimant asserts that this assessment is
directly contradicted by the mental health records submitted by Halas and McDonald.

As a reviewing court we may not reevaluate the facts or re-weigh the evidence.
*Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Our task is to determine
whether the decision is supported by substantial evidence, and we find that it is.

The ALJ must consider the medical evidence of record. Here, the ALJ clearly
considered Halas' report in reaching his decision that Keyes is not disabled. He cited Halas'
findings that the Claimant had some anxiety but presented no psychotic symptoms. She had a
depressive disorder. Her IQ scores were mildly below average, and testing showed poor to
below average memory and a third to fourth grade reading level. Halas' conclusion that Keyes
could follow simple, one and two step, instructions and/or directions and could understand and
follow through with simple written instructions, is consistent with the ALJ's finding that the
Claimant has the "residual functional capacity to do unskilled work that does not involve public
contact or close personal interactions. She can understand, remember, and carry out simple,
routine, repetitive instructions." (Tr. 25, finding 6). The ALJ properly considered Halas' report
in reaching his determination that Keyes is not disabled.

Claimant further argues that the ALJ ignored the report of Dr. McDonald. However, the
record shows that the ALJ did consider McDonald's report of her consultative examination, and

9

devotes two paragraphs of his decision to that medical evidence. Indeed, much of McDonald's report echoes the other medical evidence in this case: Claimant is depressed but not seeking counseling and not on any medication; she has social anxiety and would have difficulty working with others; she has a limited education and reads at a third grade level; she has a low IQ; and she has a fair ability to understand, remember and carry out simple job instructions. He concluded that McDonald "has greatly overstated the claimant's functional limitations, in light of the minimal abnormal clinical findings." (Tr. 22, 23). We cannot agree with the Claimant that the ALJ selectively considered McDonald's report. He simply rejected some of her conclusions as being inconsistent with other medical evidence in the record.

Finally, claimant asserts that the ALJ ignored the portion of social worker Drumm's opinion which indicated that Keyes is depressed and anxious, has anger outbursts and frequent crying spells, and has difficulty being with people. Again, we disagree. The ALJ properly considered Drumm's letter, which primarily establishes that Claimant sought counseling with the agency but did not attend sessions regularly.

We have reviewed the record in this case and conclude that there is substantial evidence to support the ALJ's decision.

## IV. Conclusion

For the reasons set forth above, we find that the ALJ properly weighed the evidence of record, and his determination that the Claimant is not disabled within the meaning of the Act is supported by substantial evidence. Accordingly, we will grant summary judgment in favor of the Commissioner and against the Claimant. An appropriate Order follows.

September 13, 2007
Date

Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.
Senior United States District Court Judge

10